

**SO ORDERED.**

**SIGNED this 23 day of August, 2007.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | CASE NO. 06-70145-JDW |
| FIRSTLINE CORPORATION, | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For the Liquidating Agent:    Michael D. Langford
                              1100 Peachtree St., Suite 2800
                              Atlanta, Georgia 30309-4530

For Donald J. Murphy:         Wesley J. Boyer
                              355 Cotton Ave.
                              Macon, Georgia 31201

**MEMORANDUM OPINION**

This matter comes before the Court on the Liquidating Agent's objection to the claim of Donald J. Murphy. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(B). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Debtor FirstLine Corporation filed a Chapter 11 petition on March 6, 2006. At the time of filing, Donald J. Murphy was the president and sole shareholder of the company. He signed the petition on behalf of Debtor. On April 20, 2006, Debtor filed its schedules, including Schedule F, which listed Mr. Murphy as an unsecured creditor with an undisputed, noncontingent, liquidated claim of $61,600 for a loan.

The Liquidating Agent for the case filed his First Omnibus Objection to Proofs of Claim and Scheduled Claims on April 26, 2007. He objected to Mr. Murphy's claim on three grounds: (1) no documents were furnished in support of the claim; (2) Mr. Murphy could be the subject of an avoidable transfer claim; and (3) the claim should be treated as an equity interest. The Court held a hearing on the objection to claim on August 6, 2007, during which the Liquidating Agent focused on the lack of loan documents as a reason to treat the advances as equity.

The parties agree Mr. Murphy advanced money totaling $61,600 to Debtor or on its behalf, which is evidenced by three checks signed by Mr. Murphy and cleared through his bank account. The parties also agree no promissory notes or other formal loan documents were

executed to memorialize the advances as loans. As a consequence, there was no agreement as to any repayment terms, including time of repayment or interest rate.

Mr. Murphy paid Debtor $50,000 by check dated October 27, 2004. Mr. Murphy testified he paid the money because an emergency arose. However, he was unable to recall any details about the emergency. The only notation on the check, "2004-0-000," sheds no light on the subject. He also testified he expected to be repaid for the advance.

Mr. Murphy paid Henderson & Godby $5,000 by check dated February 23, 2006. Mr. Murphy testified Debtor used Henderson & Godby for accounting services. Debtor was behind in its payments to the firm, and the firm refused to provide further services unless it received partial payment. Mr. Murphy made the payment on Debtor's behalf and expected to be repaid.

Mr. Murphy paid Debtor $6,600 by check dated February 24, 2006, with the notation "Ryan Oil/Norman Trucking." Mr. Murphy testified Ryan Oil and Norman Trucking were providing Debtor products and services necessary to its operations. Both companies refused to complete an order in progress without payment. Because Debtor's bank had frozen its funding, Mr. Murphy advanced the money to Debtor for the purpose of paying the two companies. He expected repayment for the advance.

Mr. Murphy testified that at the time he made the advances, Debtor's cash flow was not sufficient to repay him. Nevertheless, he expected Debtor to be able to repay the loans in the future.

Over the course of approximately 15 years, beginning in 1989, Mr. Murphy made numerous loans to Debtor–all properly documented–totaling approximately $4 million. In November 2004 (after the $50,000 advance at issue, but before the $5,000 and $6,600 advances),

3

Mr. Murphy rolled all the outstanding *documented* loans into equity. He could not explain why the $50,000 advance was not included in the rollover, and concluded its omission was an oversight.

During the hearing, the parties introduced unaudited internal financial records kept by Debtor and records audited by a certified public accountant. The internal month-end financial statements for December 2004 and 2005 included a $50,000 liability described as an accrued miscellaneous payable to Mr. Murphy. The $50,000 was not reflected in the 2004 audited financial statement. Because the two smaller advances were made in 2006, they did not appear on any of Debtor's 2004 or 2005 financial records.

## Conclusions of Law

At issue in this case is whether Mr. Murphy's claim should be allowed. In a Chapter 11 case, "[a] proof of claim or interest is deemed filed under section 501" of the Bankruptcy Code for any claim listed in the schedules as undisputed, noncontingent, and liquidated. 11 U.S.C. § 1111(a). Pursuant to Bankruptcy Code § 502(a), claims filed under § 501 are deemed allowed in the absence of objection. Under Federal Rule of Bankruptcy Procedure 3001(f), a properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." The burden, therefore, initially falls on the objecting party to overcome the prima facie validity of the claim. The burden then shifts to the claimant "to prove the validity of the claim by a preponderance of the evidence." 4 Collier on Bankruptcy ¶ 502.02[3][f] (15th ed. rev'd 2007).

In this case, Mr. Murphy's claim was included on the bankruptcy schedules as a liquidated claim for a loan he made to Debtor that was neither disputed or contingent. Therefore,

a proof of claim is deemed to be filed, and the claim is prima facie valid. The Liquidating Agent asserted, and Mr. Murphy conceded, no documents formalizing the loan were executed. The Court concludes the Liquidating Agent's showing is sufficient to overcome the prima facie validity of the claim and to shift the burden of proof to Mr. Murphy. Mr. Murphy's evidence consists of his testimony regarding his intent in making the advances and Debtor's internal financial records showing a liability owing to Mr. Murphy.

The Liquidating Agent does not dispute Mr. Murphy made three advances to Debtor of $50,000, $6,600, and $5,000. However, he argues the advances should be treated as capital contributions rather than loans, citing Stinnett's Pontiac Service, Inc. v. IRS, 730 F.2d 634 (11th Cir. 1984) as support. In Stinnett, the court listed 13 factors relevant to distinguishing between debt and equity:

> (1) the names given to the certificates evidencing the indebtedness;
> (2) the presence or absence of a fixed maturity date;
> (3) the source of payments;
> (4) the right to enforce payment of principal and interest;
> (5) participation in management flowing as a result;
> (6) the status of the contribution in relation to regular corporate creditors;
> (7) the intent of the parties;
> (8) "thin" or adequate capitalization;
> (9) identity of interest between creditor and stockholder;
> (10) source of interest payments;
> (11) the ability of the corporation to obtain loans from outside lending institutions;
> (12) the extent to which the advance was used to acquire capital assets; and
> (13) the failure of the debtor to repay on the due date or to seek a postponement.

Id. at 638. Mr. Murphy agrees the Court must consider the 13-factor test, but directs the Court to Celotex Corp. v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 176 B.R.

223 (M.D. Fla. 1994), for guidance in applying the factors. According to Hillsborough, the Court need only consider those factors relevant to the circumstances of the case. Id. at 248. Furthermore, the Eleventh Circuit Court of Appeals has urged flexibility when applying the factors, explaining they "are not rigid rules mandating a particular conclusion when the court finds certain facts. It is our job not simply to count the factors applicable in a case, but, instead, to evaluate them." Lane v. U.S. (In re Lane), 742 F.2d 1311, 1315 (11th Cir. 1984).

*1. Names given to the certificates evidencing the indebtedness.* In this case, no certificates or loan documents were prepared in conjunction with the advances. They were not formally executed under the designation of either capital contributions or loans. Because Mr. Murphy had properly documented numerous prior loans to Debtor over the course of approximately 15 years, the Court is persuaded the lack of paperwork was an oversight. Nevertheless, one of the advances was documented in Debtor's internal financial records as liability payable to Mr. Murphy. Thus, the only evidence of how the parties characterized the advances favors Mr. Murphy's assertion that the advances were loans. See Hillsborough, 176 B.R. at 248 ("The labeling of the transactions as payables by the parties evidences the parties' intent to treat the advances as loans.").

*2. Presence or absence of a fixed maturity date.* Because the advances were undocumented, the Court has no evidence of a maturity date. This factor neither benefits or hurts either party. While there is no evidence of an express maturity date, the Court also lacks evidence of the intentional omission of a maturity date (such as a demand note).

*3. Source of payments.* Possibility of repayment solely from earnings suggests the advances were capital contributions, while the possibility of repayment from other sources

suggests they were loans.  Stinnett, 730 F.3d at 638-39.  Here, the Court has no evidence as to the possible source of repayment other than Mr. Murphy's testimony that it would come from Debtor's cash, as available.  The source of that cash is unclear.

*4. Right to enforce payment of principal and interest.*  The lack of loan documents could complicate proving the existence of a loan and its terms.  However, Georgia law does not require a loan agreement to be in writing.  See O.C.G.A. §§ 13-5-30, 13-5-31 (setting forth the circumstances in which a contract must be written).  Because Mr. Murphy was the president and sole shareholder when he made the loan to Debtor, he likely could demonstrate a meeting of the minds as to the terms of the contract, giving him the right to enforce those terms.

*5. Participation in management flowing as a result of advances.*  At the time he made the advances, Mr. Murphy was the president and sole shareholder of Debtor.  Therefore, the advances did not provide him with any new or additional influence over company management.

*6. Status of the contribution in relation to regular corporate creditors.*  The Court has no evidence as to this factor, and it does not appear to be relevant in the circumstances of this case.

*7. Intent of the parties.*  The evidence in this case shows the parties intended the advances to be loans.  Mr. Murphy testified he intended to loan the money and to be repaid. Debtor entered the $50,000 advance on its books as a liability owed to Mr. Murphy.  The Liquidating Agent points out the audited financial statements did not reflect the liability. However, audited financial statements are unlikely to show any undocumented transactions, so the omission is not relevant to the parties' intent.

7

*8. Adequacy of capitalization.* There is no evidence Debtor was inadequately capitalized. The advances were targeted to discrete circumstances. They were not used to fund the daily operations of the company or to purchase capital assets. In fact, in November 2004, Mr. Murphy rolled approximately $4 million worth of loans into equity, so this is not a situation where Debtor had large amounts of debt without any capital infusion.

*9. Identity of interest between creditor and stockholder.* The factor is not relevant to this case, because there is no relation between the advances made by Mr. Murphy and the proportion of Mr. Murphy's ownership in Debtor. See Stinnett, 730 F.2d at 639-40.

*10. Source of interest payments.* As with factor 8 regarding the source of payments in general, the Court has no evidence as to the possible source of interest payments other than Mr. Murphy's testimony that any payments would come from Debtor's cash, as available.

*11. Ability of the corporation to obtain loans from outside lending institutions.* The only evidence offered on this point was Mr. Murphy's testimony that Debtor's bank had cut off funding at the time of the two smaller advances in February 2006. This evidence is unhelpful because it does not explain the circumstances leading to the funding freeze.

*12. Extent to which the advance was used to acquire capital assets.* The advances in this case were used to deal with an emergency situation and to pay three creditors for services. There is no evidence any of the funds were used to acquire capital assets.

*13. Failure of the debtor to repay on the due date or to seek a postponement.* In this case, the advances had no due date for repayment, and Mr. Murphy received no payments.

**Summary**

The lack of documentation as to the three advances renders many of the 13 factors irrelevant or otherwise inapplicable. With little other evidence as to the nature of the transactions, the case falls primarily on the intent of the parties. Even the evidence of intent is somewhat limited. Nevertheless, it weighs in favor of treating the advances as loans. Mr. Murphy intended them to be loans, and Debtor's internal records show the $50,000 was recorded as a loan. Based on this evidence and full consideration of the above-discussed factors, the Liquidating Agent's objection will be overruled, and Mr. Murphy's claim will be allowed.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT